THE NATIONAL BANK OF GLOVERSVILLE, Respondent *v.* JOHN E. WELLS, Impleaded, etc., Appellant.

In an action upon a promissory note of $2,400, it appeared that the note was indorsed by defendant W. for the accommodation of the makers, of which fact plaintiff had notice. The note was delivered by the makers to plaintiff's cashier, who indorsed it, and at their request procured it to be discounted by another bank, plaintiff receiving a compensation for procuring the discount. On, or prior to, the day the note fell due, the makers delivered to plaintiff another note, being one of several

indorsed by W., and delivered to the makers to take up the note in suit, and other notes previously indorsed by him; plaintiff's cashier was directed to apply the proceeds to take up the paper so indorsed. It did not appear that this direction was revoked. The proceeds were credited to the makers. It did not appear that plaintiff, at that time, held any paper so indorsed by W., save the note in suit, which it had taken up. A few days after, the makers drew a check on, and delivered it to, plaintiff for $2,731.62, payable to "notes, etc., or bearer." No money was paid the drawers thereon, and it did not appear that the proceeds of the note had been drawn out. *Held,* that the plain inference from the transaction was that the check was given to pay the note in suit, and that it was paid thereby; and that, in the absence of any proof rebutting this presumption, a finding of non-payment was error.

*It seems,* that a national bank has no power to loan its credit and become an accommodation indorser of a promissory note.

*National Bank of Gloversville* v. *Wells* (15 Hun, 51), reversed.

(Argued December 17, 1879; decided January 13, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 15 Hun, 51.)

This action was brought upon a promissory note of $2,400, dated August 9, 1875, made by W. R. & R. D. Burr, payable two months from date to the order of defendant Wells, and indorsed by him for the accommodation of the makers.

The referee found that said note, on or about the 11th day of August, 1875, was delivered by the defendants Burr to the plaintiff's cashier, for the purpose of having it discounted; that it was thereupon indorsed by the said cashier and sent by him to the First National Bank of Albany, to be by it discounted, and said bank received and discounted the same at the usual rate of seven per cent, and remitted the proceeds to the plaintiff on or about the 16th day of August, 1875; that the plaintiff applied the proceeds to the payment of notes held by it against the makers by their direction; that the plaintiff demanded and received, as a consideration for procuring the discounting thereof, and for the loan of its credit by indorsing the same, the sum of $14.67; that on the 12th day of October, 1875, when the said note became due, it was

duly presented for payment, which was refused, whereupon it was duly protested for non-payment, and was subsequently taken up by plaintiff; that on the 4th day of October, 1875, the defendants Burr made their three several promissory notes, all payable four months after date, and to the order of the defendant Wells, one bearing date September 15, 1875, for the sum of $2,000 ; one dated October 4, 1875, for the sum of $2,500 ; one dated October 9, 1875, for the sum of $2,000, and presented the same to the defendant Wells, who indorsed the same for their accommodation ; that such indorsement was made by the said Wells for the purpose and with the direction given to the defendants Burr, that said notes should be used exclusively to pay and take up the said note for $2,400, upon which this action is brought, and two other notes of $1,000 each, then lying in the plaintiff's bank, and one other note of about $2,000, lying at some bank in the city of New York, of all of which the said defendants Burr were the makers and defendant Wells the indorser ; that the defendants Burr, on the said 4th day of October, 1875, negotiated and delivered the first two of said notes to the plaintiff, and the same were discounted by the plaintiff at the request of said Burr, who applied $1,000, the proceeds thereof, to the payment of one of the said $1,000 notes, and the balance to the payment of notes and liabilities of theirs, other than the said $2,400 note and the remaining $1,000 note ; that on a subsequent day the defendants Burr delivered to the plaintiff the remaining $2,000 note, so indorsed by defendant Wells, for the purpose of having it discounted, and the plaintiff procured it to be discounted at the First National Bank of Albany, which remitted the proceeds thereof to the plaintiff, and the plaintiff placed the same to the credit of defendants Burr, in their account with the plaintiff on its books, on the 26th day of October, 1875, and the same were subsequently paid by the plaintiff upon the check of the defendants Burr, drawn on the 3d day of November, 1875 ; that the plaintiff had no notice that the defendant Wells had indorsed the said three notes, or either

of them, for any special purpose, or had placed any restriction upon the use to be made of them, or either of them, and, as a conclusion of law, found that plaintiff was entitled to recover.

The facts appearing upon trial, so far as essential, are set forth in the opinion.

*Samuel Hand*, for appellants. Plaintiff having had in its hands sufficient funds, which were equitably applicable to pay the note, the law will so apply them, although no application of them was made by the depositors. (*Allen* v. *Parson*, 3 Den., 284; *Seymour* v. *Van Slyke*, 8 Wend., 416; *Pattison* v. *Hull*, 9 Cow., 747; *Crocker* v. *Whitney*, 71 N. Y., 161.) The transaction in relation to the note being in excess of plaintiff's powers, the note was void, and plaintiff cannot recover. (*In re Jaycox*, 12 Blatch., 127; *Fowler* v. *Scully*, 72 Pa., 456; *Crocker* v. *Whitney*, 71 N. Y., 161; *Bank of Genesee* v. *Patchin Bank*, 13 id., 309, 314; *Crocker* v. *Whitney, supra; Farmers' Bank* v. *Baldwin*, Thompson's Bank Cases, 639.) Although a national bank does not forfeit a loan by taking usury, a note already tainted with usury is as invalid in its hands as in those of any other holder. (*Williams* v. *Storm*, 2 Duer, 52; *Clark* v. *Sisson*, 4 id., 408; *Munn* v. *Company*, 15 J. R., 44.) The transaction, in regard to this note, was not intended to be a loan of money, and was not a discount or a negotiation of a promissory note, within the meaning of the national currency act, and the after acquirement of it was an out an out purchase, *ultra vires*, and the bank acquired no title to, and cannot recover on it. (*First National Bank of Rochester* v. *Pierson*, Thompson's National Bank Cases, 637; 16 Albany Law Journal, 319; *Farmers and Mechanics' Bank* v. *Baldwin*, 23 Minn., 198; *Weckler* v. *The First National Bank of Hagerstown*, 20 Amer. R., 102, 103; N. Y. Weekly Dig. for May 13, 1878, vol. 6, No. 11, p. 251.)

*A. D. L. Baker*, for respondent. The taking of the five per cent for the negotiation of the notes did not make the

transaction usurious. (*Chatham Bank* v. *Betts,* 37 N. Y., 356; *Van Duesen* v. *Howe,* 21 id., 531; *Elwell* v. *Chamberlain,* 31 id., 611.) The referee having found that the proceeds of the notes made October 4, 1875, were used to pay other notes than the one in suit, and that this was done under the direction of Burr, and that the plaintiff had no knowledge of the instructions given by the defendant Wells to Burr, the plaintiff is a *bona fide* holder of the note. (1 Abb. Dig., 467, and cases cited; 1 id., 468; 23 Barb., 18; 4 id., 304; *Horbeck* v. *Craft,* 4 Duer, 122; *Ballard* v. *Borgett,* 47 Barb., 646; *Lamb* v. *Grover,* 47 id., 317; *Hodge* v. *Lansing,* 35 N. Y., 136; *Howard* v. *Lansing,* 35 id., 136; *Howard Banking Co.* v. *Welchman.* 6 Barb., 281.)

ANDREWS, J. The referee finds that the three notes made by the Burrs on the 4th day of October, 1875, were indorsed by the defendant Wells, for the accommodation of the makers to take up other notes for about the same amount previously indorsed by him, and with the understanding and direction to the Burrs when the indorsements were made, that the notes should be used by them to pay and take up the prior paper. This paper consisted of four notes made by the Burrs, viz.: two notes of $1,000, each, discounted and held by the plaintiff; one of $2,000, held by a New York bank, and the note of $2,400, upon which this action is brought. One of the $1,000 notes was past due; the other matured on the eighth of October. The $2,000 note was also to mature in a short time. The $2,400 note was dated August 9, 1875, and became due October 12, 1875. The Burrs within a few days after its date delivered it to the plaintiff's cashier, who indorsed it, and at their request procured it to be discounted by the First National Bank of Albany, the plaintiffs receiving from the Burrs as a compensation for procuring the discount, and for the loan of its credit, by indorsing the paper, a sum equivalent to five per cent per annum, on the amount of the note. The Albany bank discounted the note at the usual rate, and the result of

the transaction was that the Burrs paid at the rate of twelve
per cent per annum for the money received on the discount
of the paper.    The $2,400 note was protested, and soon after
was taken up by the plaintiff, and this action was subse-
quently brought thereon.    The plaintiff at the time of the
indorsement by the defendant Wells, of the notes made
October 4, 1875 held in addition to the paper already
mentioned, notes of the Burrs past due, indorsed by one
Johnson.    Johnson failed a few months after that date, and
the inference from the evidence is, that he was then irrespon-
sible.    The Burrs after obtaining the indorsement of Wells
upon the paper of the fourth of October, on the same day in
violation of their agreement with Wells and of his direction
to use the paper only for the purpose of retiring the paper
upon which he was already liable as indorser, delivered two
of the notes amounting in the aggregate to $4,500 to the
plaintiff who discounted them, and by the direction of the
Burrs applied about $3,500 of the proceeds to the payment
of the Johnson paper held by the bank, and the balance to pay
the past due note of $1,000, indorsed by Wells.

It is undisputed that so far as the notes were used to take
up the Johnson paper, it was a clear diversion of them
from the purpose for which they were indorsed, and a
fraud upon the defendant Wells.    It was a controverted
question on the trial, whether the bank when it took this
paper was informed or knew of the special purpose for
which it was indorsed, or of the restriction placed by
Wells upon its use.    The referee finds that the bank had
notice that Wells was an accommodation indorser of this
paper, as well as of all the paper then held by or which
had passed through the bank.    The Burrs testified that the
plaintiff's cashier was informed when the two notes were
discounted, that the notes upon which Wells was indorser,
were to be paid out of the proceeds of the discount.    This
was denied by the cashier.    The circumstances certainly
might naturally have suggested to the bank, that Wells
being accommodation indorser on the paper of the Burrs,

some of which was lying over past due, and the balance of which was about maturing, intended that the new paper should be used for the purpose of retiring the outstanding paper upon which he was liable. But the referee has found adversely to the defendant Wells on the question of notice, and we cannot interfere with this finding. Wells has paid all the paper indorsed by him on the fourth of October. The bank has thus been enabled contrary to the intention of Wells to secure the payment by him of the Johnson paper, practically unsecured, and with which Wells had no connection, to the amount of $3,500.

But the question remains whether the note in suit was not paid in whole or in part by the subsequent transaction between the Burrs and the bank. The third of the notes indorsed by Wells on the fourth of October for $2,000, was received by the plaintiff from the Burrs' on or after the fifth of October, and the plaintiff procured it to be discounted on its indorsement, and the proceeds were credited to the Burrs' account in the bank, on the twenty-eighth of October. The precise day on which the bank received this note is not found by the referee, and is left by the evidence in doubt. The defendant R. D. Burr testifies that he left it with the acting cashier on the fifth of October with directions to apply the proceeds towards taking up the Wells paper, and informed him at that time that the balance lacking for this purpose, he would have at the bank by the twelfth. The acting cashier denies positively that this note was left with him on the fifth. He admits that Burr brought paper to the bank on that day, but says he took it away with him. The cashier of the bank testifies that he presumes the note was left at the bank on the twelfth. That, it will be observed, is the day on which the note in suit would become due. The precise day the bank received the note is not perhaps very material. But I do not understand that there is any denial in the case of the testimony of Burr that he informed the acting cashier when he left the note, that the proceeds were to be applied to take up the Wells paper. There is no evidence

that this direction was ever revoked. The proceeds of this note, as has been said, were credited to the Burrs on the twenty-eighth of October. It does not appear that at that time the bank held any paper of the Burrs except the note in suit. The second $1,000 note held by the bank was paid. The time of payment does not distinctly appear, but it does appear that it was not paid out of the avails of this discount. On the third of November, the Burrs drew a check on the plaintiff for $2,731.62, payable to "notes, etc., or bearer." No money was paid the drawers, and the plain inference from the transaction is that it was given to pay obligations held by the bank against them. The proceeds of the discount of the note credited to the Burrs on the twenty-eighth had so far as appears never been drawn out, and were still liable to their draft, when the check of November third was drawn. The plaintiff gave no proof to rebut the natural inference from the circumstances that this check was intended to pay the note in suit. The note of October fourth from which the credit to the Burrs on the twenty-eighth was derived, was indorsed by the defendant Wells for the express purpose of taking up this paper. The Burrs when the note was delivered to the plaintiff, directed that the proceeds should be so applied. In the absence of evidence of any right in the plaintiff to make a different application, or of any different application in fact, we think the presumption is that the note in suit was paid by the check of November third, and that the issue of payment should upon the facts presented have been found in favor of the defendant Wells. The case does not very clearly present the exception raising this question, but it was assumed on the argument that it was involved, and I am of opinion that it can properly be considered under some of the exceptions to the findings, and refusals to find made by the learned referee.

The counsel have elaborately argued another question, viz.: whether a national bank can loan its credit, and become an accommodation indorser of a promissory note.

If material to the decision of this case I should have no hesitation in denying this proposition. Such a transaction as is here disclosed on the part of the plaintiff, is clearly outside of its corporate powers. If a bank may charge a compensation for loaning its credit, and procuring another bank to discount the paper of its customers, it would practically abrogate all restraints imposed by the usury clauses, in the national bank act. It will be easy, if the practice can be sustained, for banks, by a course of friendly and reciprocal dealings, to obtain from needy borrowers under the guise of commissions for indorsing, any rate of interest which they may see fit to exact. But it is unnecessary to decide whether this matter constitutes a defense.

The judgment must be reversed on the ground that the evidence unexplained, established a payment of the note in suit, and I think the proper conclusion is to reverse the judgment and grant a new trial as to all the defendants.

All concur.

Judgment reversed.