DE KOVEN et al. v. LAKE SHORE & M. S. RY. CO. et al.

(District Court, S. D. New York. September 5, 1914.)

**1.** MONOPOLIES (§ 24*)—STATE ANTI-TRUST LAWS—SCOPE.

A bill does not state a cause of action for an injunction to restrain the consolidation of two railroad companies as being in violation of the anti-trust laws of certain states, where it alleges no facts showing any restraint upon transportation exclusively in any one of such states.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

**2.** MONOPOLIES (§ 24*) — CONSOLIDATION OF CORPORATIONS — INJUNCTION — STOCKHOLDERS' SUIT—EQUITY JURISDICTION.

A suit by minority stockholders of a railroad company to restrain the majority stockholders from effecting a consolidation with another company on the ground that it will be illegal as in violation of the Sherman Anti-Trust Act of July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), is not one brought under the provisions of such act, but one invoking a remedy which existed before its passage, and is within the general equity jurisdiction of a federal court.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

**3.** MONOPOLIES (§ 24*) — CONSOLIDATION OF CORPORATIONS — STOCKHOLDERS' SUIT—ENJOINING CONSOLIDATION.

Minority stockholders of a railroad company *held* not entitled to a preliminary injunction to restrain its consolidation with another company on the alleged ground that it would be illegal as in restraint of competition and in violation of the anti-trust act, where, through ownership of a majority of the stock of one company by the other, they were, and had been for a number of years, as completely under one management and control as though consolidated, and during all such time the United States had acquiesced therein.

[Ed. Note.—For other cases, see Monopolies, Cent. Dig. § 17; Dec. Dig. § 24.*]

**4.** INJUNCTION (§ 135*)—PRELIMINARY INJUNCTION—DISCRETION OF COURT.

The granting of a preliminary injunction is discretionary with the court; the discretion to be exercised according to the circumstances of each case and the comparative injury that may result to the interested parties from its granting or denial.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 304; Dec. Dig. § 135.*]

**5.** RAILROADS (§ 123*)—STOCKHOLDERS' SUIT TO RESTRAIN CONSOLIDATION—PRELIMINARY INJUNCTION.

The plan of consolidation of two railroad companies proposed by one, which owned a majority of the stock of the other, *held* on its face and on the showing made not so clearly unfair or inequitable to the minority stockholders of the latter as to justify the granting of a preliminary injunction restraining the consolidation; their objection being only to the amount of stock to be allotted to them in the consolidated company.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 389; Dec. Dig. § 123.*]

In Equity. Suit by Annie L. De Koven and Cecil Barnes, as trustees, etc., against the Lake Shore & Michigan Southern Railway Company and the New York Central & Hudson River Railroad Company. On application for preliminary injunction. Denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Cadwalader, Wickersham & Taft, of New York City (George W. Wickersham, of New York City, Otto Kirchner, of Detroit, Mich., H. M. Daugherty, of Columbus, Ohio, and Edwin P. Grosvenor, of New York City, of counsel), for plaintiffs.

Charles C. Paulding, of New York City (Walter C. Noyes, of New York City, Alexis C. Angell, of Detroit, Mich., and Albert H. Harris, of New York City, of counsel), for defendant Lake Shore & Michigan Southern Ry. Co.

Alexander S. Lyman, of New York City (Walter C. Noyes, of New York City, Alexis C. Angell, of Detroit, Mich., and Albert H. Harris, of New York City, of counsel), for defendant New York Cent. & H. R. R. Co.

GRUBB, District Judge. This is an application by the plaintiffs for a preliminary injunction, restraining the defendant from completing a projected consolidation of the two railroad companies who are the defendants in the bill of complaint. The bill is filed by one of the minority stockholders of the defendant the Lake Shore & Michigan Southern Railway Company, owning 500 shares of its capital stock, on behalf of the plaintiffs and all other of its stockholders, who may after its filing desire to unite with plaintiffs therein.

The proposed consolidation is attacked by the plaintiffs and its completion asked to be restrained upon three separate grounds: (1) Because it is alleged that the proposed consolidation will be in violation of the anti-trust laws of the states of Michigan, Ohio, and Pennsylvania. (2) Because it is alleged that the proposed consolidation will be in violation of the act of Congress, approved July 2, 1890, known as the Sherman Anti-Trust Law. (3) Because it is alleged that the terms of the proposed consolidation are unfair and inequitable to the minority and dissenting stockholders of the defendant the Lake Shore & Michigan Southern Railway Company.

[1] First. While the bill alleges that the proposed consolidation will violate the anti-trust laws of the states of Ohio, Michigan, and Pennsylvania, it avers no facts showing a restraint of anything but interstate commerce, between the city of Buffalo, in the state of New York, and the city of Chicago, in the state of Illinois. The restraint or monopoly of interstate transportation is provided for by the Sherman Anti-Trust Law, and it displaces the jurisdiction of the states to regulate or prohibit with regard to that subject-matter. There is no averment of any restraint upon any transportation exclusively within any one of the states mentioned, to which the anti-trust laws of any one of those states might apply, even if it be conceded that the regulation or prohibition of such restraints or monopolies would still be held to be within the competency of the states, in view of the existing legislation of Congress upon the subject of restraints and monopolies in transportation.

Second. It is alleged that the proposed consolidation will be in violation of the Sherman Anti-Trust Law. The lines to be consolidated are neither competing or parallel lines. The defendant the New York Central & Hudson River Railroad Company, however, is the owner

of a controlling interest in the capital stock of the Michigan Central Railroad Company, which, by virtue of its controlling stock ownership in the Canada Southern Railway Company, forms a line from Buffalo to Chicago, which, separately owned, would compete with the line from Buffalo to Chicago, which will be formed by the consolidation of the two defendants. It also appears that the defendant the New York Central & Hudson River Railroad Company is the owner of the capital stock of the Western Transit Company, which owns a line of steamships operating between Buffalo and Chicago, and which would, separately owned, compete with the consolidated line. The defendant the Lake Shore & Michigan Southern Railway Company also owns the New York, Chicago & St. Louis Railroad Company, which is a practically parallel line to it from Buffalo to Chicago. It is by virtue of this situation that the plaintiffs contend that the proposed consolidation will continue and perpetuate the existing control of all four lines in the consolidated company, and so operate in violation of the Sherman Law.

The defendants' reply to this contention that: (a) It is the well-settled rule in the Second Circuit that a suit in equity under the Sherman Law will only lie at the instance of the United States; (b) that the bill and affidavits fail to show any restraint or monopoly of interstate transportation arising out of the proposed consolidation; (c) that the control, which is alleged to be in violation of the law, already existed for many years before the plan of consolidation was considered, and would not be intensified by the completion of the plan; and (d) that the former control is changed by the plan of consolidation in form only, and not substantially in degree, and that the United States has for years acquiesced in that control, through failure of the department of justice to act, and affirmatively through the approval of the Interstate Commerce Commission.

[2] (a) The plaintiffs contend that the bill is not a suit in equity under the Sherman Act, and that the decisions from the Second Circuit, relied upon by the defendants, do not therefore apply. It seems to me that the plaintiffs' contention is correct. The present suit is one by a dissenting minority stockholder to restrain the majority stockholders from accomplishing what is asserted to be an illegal or ultra vires act. It is, therefore, a well recognized species of general equity jurisdiction, and not a mere statutory remedy, conferred by the Anti-Trust Law. The plaintiffs would be entitled to resort to this remedy if the Sherman Law had provided no equitable remedy for its enforcement, and the fact that it did provide one, available only to the United States, cannot be held to deprive an individual of an equitable remedy which was open to him before and independent of the statute. The fact that the relief granted to the government in an equity suit, instituted by it under the Sherman Law, might be of the same nature as that granted an individual plaintiff cannot change the result. Nor can the fact that the illegal or ultra vires act is made so only by the statute, which creates the equitable statutory remedy, do so. If it be an illegal or ultra vires act, however made so, a minority stockholder had, under the general principles of equity juris-

prudence, a remedy to restrain the corporation and the majority stockholders from accomplishing it, of which he is not deprived by the creation of a statutory equitable remedy in favor of the government alone, and of which he is not permitted to avail. It seems clear that if the Sherman Law had declared combinations in restraint of trade illegal and ultra vires, and provided no equitable remedy in favor of the government or any one else, the interest of a minority stockholder that his shares should not be involuntarily transferred from a lawful to an unlawful enterprise would entitle him to complain of the proposed action of the corporation, through the majority stockholders, in a suit in equity. The providing of such a statutory remedy, which could be availed of only by the government, ought not to be construed to take away by implication the existing remedy of the individual 'stockholder under general equity principles. A dissenting stockholder would have a standing in equity to enjoin a proposed consolidation of competing parallel lines, in violation of a state constitutional provision prohibiting such consolidations, upon the ground that it was ultra vires. I can see no distinction between the effect of such a constitutional provision and that of the Sherman Law in this respect.

(b) The averments of the bill are sufficient to put in issue, as a matter of pleading, the illegality of the proposed consolidation under the Sherman Act, and the affidavits of plaintiffs to the bill and of Mr. Rowland are some evidence tending to support the allegations of the bill. The affidavits of Messrs. Smith and Kallman qualify or deny the facts contained in those of the plaintiffs. The issue is presented for decision upon an application for a preliminary injunction. It is clear that so important and complicated an issue cannot be satisfactorily determined, except upon final hearing, and would be best determined in a suit in which the government was the complaining party; since a decision in this case would not be binding upon the United States, but, on the contrary, a decision in a suit instituted by the United States would be controlling as to all parties.

[3] (c) The defendants assert that the consolidation would affect the form, but not the fact of control, which would remain after consolidation just as it did before, and with no greater force or effect. This seems to have been the view taken by the Interstate Commerce Commission as justifying its report in favor of the consolidation. It is quite clear that the New York Central Company, through its stock ownership in the Lake Shore Company and the identity of managements, has since 1898 exercised as complete a control over the latter as it could have done by a legal consolidation. The proposed consolidation can, at most, only make easier the perpetuation of that control. It cannot add anything to the control, since it was complete already. If the control is hereafter determined to be illegal, it does not follow that the proposed consolidation of the two defendants would be found obnoxious to the statute. Before consolidation the New York Central, if the combination was found to be illegal, would have been compelled to part either with its interest in the Michigan Central Company and in the Western Transit Company, or both, or with its interest in the Lake Shore Company, and the Lake Shore with its

interest in the New York, Chicago & St. Louis Company. The same alternative would be presented to the consolidated company after the consolidation, in the event the consolidation should be successfully assailed. Confronted with the necessity so created, the consolidated company might well elect to part with its interest in the Michigan Central and in the steamship company and retain its interest in the Lake Shore. If it did so, a consolidation, such as is proposed between the defendants, would be beyond criticism. Its proposal to consolidate the two defendants without including the Michigan Central and the steamship company would indicate such an election on the part of the New York Central Company in advance of a requirement to exercise it. If the stock ownership of the New York, Chicago & St. Louis Company by the Lake Shore Company is in violation of the law, it is because the two lines are parallel and competing, and this is as true before as after the proposed consolidation. The status would therefore in no way be affected by the proposed consolidation. The illegality of the plaintiffs' ownership of stock in that company would exist before and after consolidation in exactly the same degree. It is true that a future forced separation of the Michigan Central Company or the steamship company, or both, from the consolidated company might lessen the value of the consolidated company's stock, as compared with the Lake Shore Company's stock, and so make necessary, to accomplish equity to the Lake Shore Company's minority stockholders, a more favorable ratio than is now proposed to be accorded them in the consolidation. The necessity for such a separation and the probable terms of disposition of the interest of the consolidated company in the Michigan Central Company and the steamship company, in the event thereof, are too conjectural, so far as causing injury to the minority stockholders of the Lake Shore Company is concerned, to justify the interposition of the court to stay the consolidation, at least at this stage of the proceeding. The enforced separation of the Western Transit Company depends upon the decision of the Interstate Commerce Commission under the Panama Canal Act, and the probable result of the exercise of its discretion is entirely conjectural.

(d) The acquiescence of the United States in the control hitherto exercised by the New York Central Company in the Lake Shore Company, the Michigan Central Company, and the steamship line, and of the Lake Shore Company in the New York, Chicago & St. Louis Company, would probably not prevent the government from hereafter seeking a dissolution of the combination, if it be a combination in restraint of interstate transportation, in violation of the Sherman Law. United States v. International Harvester Co. (D. C.) (Eighth Circuit, decided August 12, 1914) 214 Fed. 987.

[4] The granting of a preliminary injunction is discretionary with the court; the discretion to be exercised according to the circumstances of each case and the comparative injury that may result to the interested parties from its granting or denial. In view of the long period of acquiescence on the part of the United States in the identical control exercised by the New York Central Company; in view of the unsatisfactory opportunity of determining the issue on a preliminary

motion, and the very great advantage of having the legality or illegality of this control determined once for all, which can only be done at the suit of the United States; in view of the fact that the illegal control, if it be illegal, existed before as well as after consolidation, and, so far as the ownership of the New York, Chicago & St. Louis Company is concerned, with the acquiescence of the plaintiffs and the other minority stockholders of the Lake Shore Company, and in view of the fact that the illegality in the combination, if any exists, can be removed without disturbing the consolidation of the two defendants, and upon terms fraught with only conjectural injury to the plaintiffs, it seems to me that the discretion of the court would be properly exercised by denying the motion for an injunction pending final hearing, leaving the plaintiffs to seek redress in the interim, if entitled to any on this line, through the United States in a suit brought by it, or upon final hearing in this cause. If the United States should take action pending final hearing, it would be time enough for the plaintiffs to apply to stay the consolidation pending the result of such action. If the consolidation should be completed pending final hearing, in the absence of governmental action, and the control of the consolidated company be held thereafter illegal, it would not follow that the consolidation would be set aside, since the illegality could be corrected by the separation of the companies subject to such control, other than those consolidated.

[5] Third. The plaintiffs also attack the proposed consolidation upon the further ground that the basis of exchange of the Lake Shore shares for those of the consolidated company is unfair and inequitable to the minority stockholders of the Lake Shore Company. The plan of consolidation can be carried out only by the New York Central Company voting its shares in the Lake Shore Company in favor of it. It must therefore affirmatively appear that the plan is fair and just to the minority stockholders, or it cannot be sustained. The New York Central Company, as a majority stockholder in the Lake Shore Company, occupies to its minority stockholders a quasi fiduciary relation, which imposes the obligation of perfect good faith in its dealings towards the minority. If the agreement of consolidation is shown to be fair and equitable to the minority, it should be permitted to be proceeded with, otherwise not.

The agreement of consolidation provides that the minority stockholders of the Lake Shore Company shall receive five shares of the capital stock of the consolidated company for each share of Lake Shore stock owned by them; that the stockholders of the New York Central Company shall receive one share of stock in the consolidated company for each share of their stock in the original company; that the Lake Shore stock owned by the New York Central Company shall be canceled; and that the consolidated company shall assume the debts of, and its entire property be liable for, the obligations of the constituent companies. The effect of the agreement, as it relates to the minority stockholders of the Lake Shore Company, is to give them a one-tenth interest in the properties of the Lake Shore, which is the proportion of their ownership in that property at present, and in ad-

dition a one-tenth interest in the properties of the present New York Central Railroad Company. This would be represented by their stock interest in the consolidated company. As they retain the same quantum of interest in the Lake Shore properties after as before consolidation, it is clear that the agreement of consolidation deals fairly with them, unless it be that the addition of the properties of the present New York Central Railroad Company, subject to its obligations, will make their proportionate interest in the consolidated property of less value than their present like proportionate interest in the present properties of the Lake Shore alone. This would seem to depend upon whether or not it is likely that the present properties of the New York Central Railroad Company, when taken in connection with its present and prospective indebtedness, will prove of advantage to the Lake Shore or be a burden upon it. So long as the net earnings of the present New York Central properties, applicable to the payment of dividends, amount to a substantial sum, it is clear that the consolidation will be an advantage to the Lake Shore minority stockholders, since their dividends upon the consolidated properties, in that event, will exceed those from the Lake Shore properties alone. It is conceivable that the New York Central properties might fail to earn net sufficient to more than pay the fixed charges to which they are subject, or that the burden of its indebtedness assumed by the consolidated company might at some time be such as to depress the value of the interest of the minority stockholders of the Lake Shore in the joint properties below that of their interest in those of the Lake Shore alone. This is the plaintiffs' contention.

An examination of the affidavits presented upon the hearing of the motion convinces me, as far as affidavits can, that there is no reasonable ground to apprehend that the net earnings of the present properties of the New York Central Railroad Company, applicable to the payment of dividends, will reach the vanishing point, so far as it is possible to foresee at the present time, or that these properties are at all likely to become a burden and a disadvantage to the consolidated company. It is true that the proportion of net operating income, necessary to take care of interest and rentals, is much higher for the New York Central than for the Lake Shore, and that this fact is to be reckoned with as one of the factors in fixing a fair proportionate value between them. It is, however, not the sole factor, and it seems to me undue emphasis is given to it by the method used by Mr. Thompson in his affidavit in support of plaintiffs' motion. That some weight has been given to it, upon the basis of the proposed consolidation, is evident from the fact that, based upon the proportionate contribution of each road to the dividend fund according to the average net earnings of each for the last five years, the ratio of value would be less than $3\frac{1}{2}$ to 1, instead of 5 to 1, as in the proposed consolidation. It is possible that, upon a fuller presentation upon final hearing, a different conclusion may be reached. It is difficult to reach a satisfactory conclusion upon the affidavits of experts and in the absence of cross-examination. If the attitude of the plaintiffs was that of resisting consolidation upon any terms, irreparable injury might result from

the denial of the preliminary injunction. Their objection is not to the fact of consolidation, but to the proportion of values on which the exchange of stock is to be had according to the proposed agreement. A ratio of 7¾ to 1 would, it appears, not be unsatisfactory to them. Upon final hearing, if plaintiffs sustain their contention that their minority stock should receive a larger proportionate interest in the consolidated company, it will not be too late to correct the mistake, and this can be done without necessarily setting aside the consolidation, if it has then been completed. A court of equity could decree the setting aside of the consolidation conditionally upon the plaintiffs not being accorded the increased share in the consolidated company or its equivalent in money, which the court may find the plaintiffs entitled to, in addition to what they receive under the agreement of consolidation. In that way the interest of the plaintiffs would receive the proper protection, the plan of consolidation would not be unduly delayed pending the final hearing, and any injustice ascertained upon final hearing to have been done the plaintiffs or other dissenting minority stockholders could then be rectified without necessarily upsetting the consolidation. The pendency of the litigation would charge those dealing in the securities affected by the consolidation with notice of the rights of the plaintiffs and other minority stockholders and preserve the plaintiffs' rights unimpaired as to such persons.

In view of the fact that the complaint of the plaintiffs relates to the amount of stock in the consolidated company to be allotted to them by the proposed agreement and is not directed against a consolidation upon any terms, and in view of the fact that the consolidation may be allowed to proceed, pending final hearing, and no irreparable injury result to the plaintiffs, whose additional interest in the consolidated company, if any there be, can be provided for in the final decree, or by setting aside the consolidation, in the event it is not provided for, and in view of the probable injury to defendants by delaying the accomplishment of the consolidation until final hearing, an injury not admitting of computation upon a basis that would justify compensation in the way of damages, it seems to me that the motion for a preliminary injunction should be denied upon this ground also, and the rule to show cause discharged, at the costs of the plaintiffs.