## GUITERMAN v. PENNSYLVANIA R. CO. et al.

### No. 5382.

District Court, E. D. New York.

March 31, 1931.

852

Frank M. Swacker, of New York City (H. F. O'Donnell, of New York City, of counsel), for plaintiff.

O'Brien, Boardman, Conboy, Memhard & Early, and Alfred A. Gardner, all of New York City (Alfred A. Gardner, Philip W. Boardman, and John Vance Hewitt, all of New York City, of counsel), for defendant Pennsylvania R. Co.

GALSTON, District Judge.

This action was begun in the Supreme Court of the state of New York, Nassau county, by the service of a summons and complaint on the Pennsylvania Railroad Company on January 2, 1931. That company was the only defendant served. On the petition of the railroad company, the action was removed to this court.

By this motion the defendant Pennsylvania Railroad Company seeks to set aside the service of the summons and complaint and to have the complaint dismissed, upon the grounds that the Supreme Court of the state of New York acquired no jurisdiction either over the defendant for the cause of action alleged in the complaint, or over the alleged cause of action.

It is conceded that, if the state court had no jurisdiction over the subject-matter, this court acquired none on removal.

The plaintiff is a stockholder of 100 shares of the capital stock of the Pennsylvania Railroad Company. She alleges that the Pennsylvania Railroad Company, some time between February 1, 1927 and June 30, 1928, acquired, by purchase, shares of the capital stock of the Wabash Railroad Company amounting to 48 per cent. of the total issued and outstanding stock and about 30 per cent. of the total capital stock issued of the Lehigh Railroad Company. It is also alleged that the Wabash Company owned and controlled 19 per cent. of the outstanding capital stock of the Lehigh Company, and that in consequence the Pennsylvania Company controlled approximately 49 per cent. of the total outstanding capital stock of the Lehigh Railroad Company. Such holdings are alleged to have been more than 50 per cent. of stock, which during the last five years preceding the filing of the complaint was represented at stockholders' meetings of these two companies, and thus in effect constituted a practical control by the Pennsylvania Railroad Company of each of said two railroad companies.

It is said that but for these acts of the defendant, the three railroad companies would be in active, keen and direct competition, and that the purpose and effect of the acquisition of the aforesaid securities by the Pennsylvania Railroad Company were in violation of the Act of Congress of July 2, 1890, known as the Sherman Anti-Trust Law, and acts amendatory thereof (15 USCA § 1 et seq.), and also of the Act of Congress of October 15, 1914 (38 Stat. 730), known as the Clayton Act and acts amendatory thereof, and that in consequence the railroad company became subject to continuing liability of the penalties provided in the Anti-Trust Act.

It further appears from the complaint that, on May 6, 1929, the Interstate Commerce Commission issued its complaint under the Clayton Act against the Pennsylvania Railroad Company concerning the acquisition of the aforesaid stocks of the Wabash Company and the Lehigh Company, and after due hearing found that the three companies were competitors in interstate commerce, and that the stocks acquired by the railroad company were not acquired solely for the purpose of investment. The Commission accordingly issued its order directing the Pennsylvania Railroad Company to divest itself of its holdings in the other two companies.

It is alleged that the price paid by the Pennsylvania Railroad Company for the securities purchased was exorbitant, the total cost being in excess of $106,500,000, and that the Pennsylvania Railroad Company has sustained and will continue to sustain a loss of not less than $2,500,000 annually, the excess of carrying cost over the dividends received on the said stocks.

The plaintiff seeks, therefore, to have the acts of the railroad company in the purchase by the railroad company of the aforesaid capital stock of the other two railroad companies adjudged unlawful and a breach of trust on the part of the defendant directors. She seeks an accounting, and prays that judgment of the amount of the losses sustained be rendered against the defendant directors and ordered to be paid by them to the treasury of the railroad company. Further relief demanded is that, upon the satisfaction of the judgment, the railroad company turn over to the defendant directors or their nominees the shares of stock held by the Pennsylvania Railroad Company in the other two railroad companies; and, finally, that, if any penalties under the Sherman Anti-Trust Act or any other act are exacted against the railroad company, the defendant directors be required to reimburse the railroad company.

The critical question involved is whether the state court had jurisdiction of the subject-matter of this action. It is contended by the defendant that cases arising out of the Sherman and Clayton Acts are within the exclusive jurisdiction of the federal court, and reliance is had on General Investment Co. v. Lake Shore & M. S. Ry. Co., 260 U. S. 261, 43 S. Ct. 106, 117, 67 L. Ed. 244.

That was a suit in equity begun in the state court of Ohio. The plaintiff sought to enjoin a proposed consolidation of certain railroads on the ground that such consolidation would contravene the Sherman Anti-Trust Act and the Clayton Act. The cause was removed, as herein, to the federal court. The jurisdiction of the court was then assailed on the ground that the plaintiff had no standing to sue under the Sherman Anti-Trust Act or the Clayton Act in the state court. The court said, referring first to the Sherman Anti-Trust Act: "The present suit for an injunction, brought by a private corporation in its own interest, was not within those remedies, and so could not be maintained under that act standing alone."

And again, referring to the eighteenth section of the Clayton Act (15 USCA § 26): "This section undoubtedly enlarges the remedies provided in the Sherman Anti-Trust Act to the extent of enabling persons and corporations threatened with loss or damage through violations of that act to maintain suits to enjoin such violations, save in the instances specified in the proviso. This right to sue, however, is granted in terms which show that it is to be exercised only in a 'court of the United States.' This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it. The situation was the same in respect of the purpose to enjoin a violation of the Clayton Act."

It may be noted that the relief sought herein is not injunctive. Plaintiff seeks not to restrain the defendants, but to obtain an accounting and to compel the individual defendants to reimburse the railroad company for any losses sustained arising out of their alleged illegal acts. Did the Supreme Court, in General Investment Co. v. Lake Shore & M. S. R. Co., in holding that a state court had no power to grant the statutory relief (i. e., that of injunction), foreclose a state court from entertaining jurisdiction of any other relief which might flow from a violation of the two acts or either of them? I cannot so interpret the opinion. On the contrary, proper significance given to the expression, "in so far as its purpose was to enjoin," etc., justifies the deduction that a state court might have jurisdiction of a cause which sought a different relief. There is nothing in the language of the opinion to warrant one in drawing the inference that the court excluded a state court from jurisdiction as to all rights which might relate to the Sherman Anti-Trust Act. At most, the Supreme Court said that only as its purpose was to enjoin a violation of the Sherman Anti-Trust Act was the state court without jurisdiction.

The plaintiff therefore properly contends that the question was not settled by the Supreme Court in General Investment Co. v. Lake Shore & M. S. Railroad Co.; and she urges that the remedy sought herein is in no sense statutory, but of such general equitable nature, as was approved in De Koven et al. v. Lake Shore & M. S. Ry. Co. et al. (D. C.) 216 F. 955, 957. In that suit the court said: "The present suit is one by a dissenting minority stockholder to restrain the majority stockholders from accomplishing what is asserted to be an illegal or ultra vires act. It is, therefore, a well recognized species of general equity jurisdiction and not a mere statutory remedy, conferred by the Anti-Trust Law. The plaintiffs would be entitled to resort to this remedy if the Sherman Law had provided no equitable remedy for its enforcement, and the fact that it did provide one, available only to the United States, cannot be held to deprive an individual of an

equitable remedy which was open to him before and independent of the statute. The fact that the relief granted to the government in an equity suit, instituted by it under the Sherman Law, might be of the same nature as that granted an individual plaintiff cannot change the result. Nor can the fact that the illegal or ultra vires act is made so only by the statute, which creates the equitable statutory remedy, do so. If it be an illegal or ultra vires act, however made so, a minority stockholder had, under the general principles of equity jurisprudence, a remedy to restrain the corporation and the majority stockholders from accomplishing it, of which he is not deprived by the creation of a statutory equitable remedy in favor of the government alone, and of which he is not permitted to avail. It seems clear that if the Sherman Law had declared combinations in restraint of trade illegal and ultra vires, and provided no equitable remedy in favor of the government or any one else, the interest of a minority stockholder that his shares should not be involuntarily transferred from a lawful to an unlawful enterprise would entitle him to complain of the proposed action of the corporation, through the majority stockholders, in a suit in equity. The providing of such a statutory remedy, which could be availed of only by the government, ought not to be construed to take away by implication the existing remedy of the individual stockholder under general equity principles."

In other words, Judge Grubb held that at least in the federal court an individual stockholder could bring a suit in equity to restrain the commission of an act made unlawful by a statute of the United States.

Judge Hough, in Boyd v. New York & H. R. Co. (D. C.) 220 F. 174, 180, takes the same view: "But if private litigants have and seek to assert a private right which is molested, or in danger of violation; and if such actual or threatened infringement consists not merely in contract breaking or other private delict, but also gives rise to transgressions of public law—then private litigants may invoke that law and urge as an additional and potent reason for protecting their private rights the fact that the threatened assault upon the same will constitute not only a breach of obligation but a public wrong. De Koven v. L. S. & M. S. Ry. Co. (D. C.) 216 F. 955."

Of course it may be noted that neither De Koven v. Lake Shore & M. S. Ry. Co. nor Boyd v. New York & H. R. Co. et al. involved the question of the jurisdiction of a state court in similar circumstances. But it was said in Claflin v. Houseman, 93 U. S. 130, 135, 23 L. Ed. 833: "Other analogous cases have occurred, and the same result has been reached; the general principle being, that, where jurisdiction may be conferred on the United States courts, it may be made exclusive where not so by the Constitution itself; but, if exclusive jurisdiction be neither express or implied, the State courts have concurrent jurisdiction whenever, by their own constitution, they are competent to take it."

Now there is nothing in the Sherman Act or the Clayton Act which expressly gives exclusive jurisdiction to the federal courts in respect to violations of individual private rights; nor is there such exclusive jurisdiction vested in such courts by implication.

It is true that section 4 of the Sherman Anti-trust Act (title 15, U. S. Code § 4 [15 USCA § 4]) vests the Circuit Court of the United States with jurisdiction to prevent and restrain violations of the act, and empowers United States attorneys to institute proceedings in equity to prevent and restrain such violations; and section 7 (title 15, U. S. Code, § 15 [15 USCA § 15]) of the act empowers any person who has been injured in his business or property, by reason of anything forbidden by the act, to sue in any Circuit Court in which the defendant resides or is found to recover damages.

But those two provisions relate to remedies. It is unreasonable to suppose that the act was intended to exclude persons who had equitable rights, arising out of anything forbidden or declared to be unlawful by the act, from pursuing their remedies in a proper jurisdiction.

Similarly provisions of the Clayton Act (title 15 U. S. Code, §§ 21, 25 [15 USCA §§ 21, 25]), in conferring jurisdiction upon the Interstate Commerce Commission to enforce compliance with sections 13, 14, 18, and 19 of the act, and upon the District Courts of the United States with jurisdiction to prevent and restrain violations of sections 12 to 27, did not exclude private persons, whose rights were affected by unlawful or illegal acts, from seeking redress in state courts.

The question of the administration of federal laws in state courts is certainly not new. Justice Washington, in Houston v. Moore, 5 Wheat. 1, 5 L. Ed. 19, shows that, so long as Congress does not exercise its power to make the jurisdiction of the federal courts exclusive, the state courts are not prevented

from exercising jurisdiction, even over causes arising out of the acts of Congress, if they can find the requisite authority in their own inherent powers.

Questions as to the concurrent jurisdiction of state courts in causes arising out of the federal laws have been frequently raised in actions involving national banks. Brinckerhoff v. Bostwick, 88 N. Y. 52, holds that a state court has jurisdiction, on an action by the stockholders of the national bank against its directors, to recover damages sustained through the latter's negligence. The court in part said: "The jurisdiction of the State court to entertain the action is also challenged by the demurrer. The right of action is not in our opinion derived from the act of Congress, but depends upon general principles of equity; but in any aspect of the case the State courts have concurrent jurisdiction, unless exclusive jurisdiction has been conferred upon the United States courts. Claflin v. Houseman, 3 Otto [93 U. S.] 130 [23 L. Ed. 833]; Robinson v. Nat. Bank of Newberne, 81 N. Y. 385, 37 Am. Rep. 508; National Bank of Gloversville v. Wells, 79 N. Y. 498, affirmed in the Supreme Court of the United States, January, 1882."

Now, in the case at bar, essentially the issue is whether the defendant directors committed an ultra vires act. That is the general allegation. The action rests on that broad charge. The particular ultra vires act alleged to have been committed arises out of the Sherman Act and the Clayton Act. The Supreme Court of the state of New York certainly has jurisdiction in causes in which stockholders charge directors with malfeasance. That such malfeasance may arise out of a violation of a federal statute should not deprive the state court of jurisdiction unless Congress conferred exclusive jurisdiction on the federal courts as to all rights and remedies in respect thereto.

In Underhill v. Schenck, 238 N. Y. 7, 143 N. E. 773, 775, 33 A. L. R. 303, the court said: "If the same act is not merely an invasion of the statutory right of property, but is also the breach of a contract or the abuse of a relation, he may count upon the breach or the abuse, and have relief accordingly. When this is the ground of action, the courts of the state are not shorn of their competence.

I conclude, therefore, that the state court had jurisdiction over the subject-matter of this suit.

However, now that the issues are in the federal court, it is proper to emphasize that provision of the Clayton Act (title 15, U. S. Code, § 21 [15 USCA § 21]), which would enable the Pennsylvania Railroad Company to obtain a review in a Circuit Court of Appeals from the order of the Interstate Commerce Commission set forth in the complaint. If it should subsequently appear in the cause pending in this court that the defendant Pennsylvania Railroad Company, or indeed any of the defendants, are seeking or shall seek such a review in a Circuit Court of Appeals, it would seem proper to stay this cause pending a final determination of such order.

A second point urged by the railroad company is that the state court obtained no jurisdiction over it for the purposes of the suit. Reliance is had on Louisville & Nashville R. Co. v. Chatters, 279 U. S. 320, 49 S. Ct. 329, 330, 73 L. Ed. 711, in which it was said: "Even when present and amenable to suit it may not, unless it has consented (Pennsylvania Fire Ins. Co. v. Gold Issue Mining Co., 243 U. S. 93, 37 S. Ct. 344, 61 L. Ed. 610; Smolik v. Phila. & Reading Coal Co. [D. C.] 222 F. 148), be sued on transitory causes of action arising elsewhere which are unconnected with any corporate action by it within the jurisdiction (Old Wayne Mut. Life Ass'n v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345; Simon v. Southern Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492)."

That case certainly would be applicable, as would also Guerin Mills, Inc., v. Barrett, 254 N. Y. 380, 173 N. E. 553, if from the face of the complaint it appeared that the transactions complained of were unconnected with any corporate action taken by it within the state of New York. A reading of the complaint, however, reveals no allegation made as to where the alleged illegal acts were committed.

The motion must therefore be denied. Settle order on notice.